Okay, so next case for argument is Graham v. Pfister, Ms. Ellis Good morning, your honors. Gail Ellis, counsel for petitioner Edward Graham. May it please the court Our briefs in this case focus on three separate though related issues. First, that the Illinois trial court violated Mr. Graham's right to choose his counsel by actively encouraging him to continue being represented by George Howard, his privately retained defense attorney. Second, that this court should apply Gonzales-Lobez structural air holding to Mr. Graham's case because to do so would give effect to the purposes of federal habeas review while not intruding on the state's process. And third, that this court should apply Gonzales-Lobez structural air holding because Mr. Graham has demonstrated that the trial court's violation of his right to choose his counsel had adverse effects on his case. For the purposes of today's arguments, I'll primarily focus on issue one, the Sixth Amendment, while briefly touching on the issues of remedy, both structural error and adverse effect. Respondent in this case urges that only an explicit denial of the right to choice of counsel constitutes a violation of the Sixth Amendment, echoing the Illinois Appellate Court's assertion that the trial court's obligation in this case was merely to ensure Graham's right to the counsel of his choosing. Both formulations ignore the scope of the right to choice of counsel as articulated and clearly established Supreme Court precedent. The Supreme Court's case, U.S. v. Gonzales-Lopez in 2006, made clear that the right to choice of counsel under the Sixth Amendment is a right that sounds in the Supreme Court precedent to choose counsel of his own volition, free from the arbitrary interference. Okay, this is a lot of generality. We know what the law is. What specifically did the Illinois Appellate Court do wrong? Is there a bad factual finding or a misapplication of the law? An unreasonable application of clearly established federal law, Your Honor. Okay, and where did they go off the rails? So what the Illinois Appellate Court did was, there are two main flaws. The first of which is that they did not recognize that under a clearly established Supreme Court precedent that unaffected denial of the right to choice of counsel is enough to constitute a violation of that right. So under Morris v. Slappy, United States Supreme Court Morris v. Slappy, and continued in Wheat and, pardon me, cited in Wheat and Gonzales-Lopez. Okay, I'm not understanding that argument, but the court said that the defendant wasn't pressured by the judge to stick with this attorney. So, that's a factual finding, right? And we'll defer to that, and you're not arguing that that was a mistaken factual finding. So if the court didn't pressure him to stick with this attorney who had been misrepresenting what was going on with the disciplinary authorities, then how can the court have committed a violation of the Sixth Amendment? So what the Illinois Appellate Court did in its decision is it found, it acknowledged that the trial court interfered with Mr. Graham's decision-making process. It said that the court, it acknowledged that the court had influence over Mr. Graham's decision, but it found that the court did not compel Mr. Graham to continue with Mr. Howard. And our argument, and what we, what the clear Supreme Court precedent makes clear, is that this interference on the part of the trial court arises to a level of a violation of the right to choice of counsel. U.S. v. Gonzales-Lopez makes clear that the Sixth Amendment right to choice of counsel, as mentioned previously, What did the court do that interfered with that? The trial court? The trial judge in the case said, you make your own decision, you know, it's really up to you. There's bending over backwards to make a record and not influence the decision. I would push back on that interpretation of the, on the, the record makes... Well, we're required to accept the interpretation and of the Intermediate Appellate Court in Illinois. So we don't, this is not plenary review. So even if we see it differently, that's not enough to get habeas relief. Absolutely, Your Honor. So what the... So we accept what the court is saying, that this was in no way pressuring or compelling him to stick with this lawyer. What the Illinois Appellate Court said was that it was not a compulsion, that the Illinois Appellate Court, I'm sorry, that the Illinois Trial Court did not compel Mr. Gramps to continue with that, with that attorney. And our argument is, and what the Supreme Court precedent makes clear, is that that's the wrong standard. What the Illinois Appellate Court focused on when it was evaluating the trial court's actions was whether or not the, was whether or not, I should back up, I apologize, the Illinois Appellate Court stated that the trial court insured Gramps' right to the counsel of his choosing and ended the inquiry there. He was not compelled. Graham made a choice on the record. And we certainly concede that Graham did make a choice on the record. However, the Illinois Appellate Court's formulation and interpretation of the Sixth Amendment was unreasonably applied to the facts of this case. Because the question is not whether or not Mr. Graham was compelled. The question is whether or not Mr. Graham made his own choice. The Illinois Appellate Court inquiry was simply, well, there's, but did the judge do anything except say that Howard was a good lawyer? The judge did provide a very strong endorsement of Mr. Howard's ability. Well, if that's what he thought, what's wrong with that? What is wrong with that is that it interfered in Mr. Graham's ability to make a choice. But you think that if a judge thinks a lawyer is very good and the best possible lawyer for a defendant, he shouldn't say so? The... Is that what you're saying? Yes. The judge should not... When a defendant indicates, as Mr. Graham did... I don't understand. It's, why isn't it to the benefit of the defendant to be told that a particular lawyer is good? So in this particular instance, it was not to Mr. Graham's benefit because the... Well, we don't know because we don't know what the alternative lawyers would be. True, but presumably being represented by an individual who has many disciplinary proceedings pending against him. Well, maybe they all have many disciplinary infractions. That's very common. So we don't know who the next choice would have been, do we? No, we don't. I wasn't sure. Apparently he was, Howard. He was a very highly regarded criminal defense lawyer. At one time he was, this is true. However, the argument, the point here is that when a defendant in this particular instance brings the issue on the record and states that he has significant issues with his attorney and is indeed at a position to make a choice as to whether or not to continue with that attorney, the trial judge should not, as the trial judge did here, insert itself to such an extent that it essentially over, it presents basically one choice to Mr. Graham to continue with Mr. Howard. But the intermediate appellate court said that's not what happened. And we have to defer to that. The intermediate appellate court said that, yeah, he vouched for this attorney, but that didn't, that wasn't the only thing that he did. After vouching for this attorney, he explained exhaustively to the defendant that it was entirely his decision about whether to stick with him or to ask for someone else. He didn't place any time pressures on him for making the decision or say that, you know, we have to stick with this trial date. Sometimes judges overstep by conveying the impression that, you know, they're irritated because the trial is going to have to be adjourned if there's a new counsel that step. None of that happened here. The judge was very patient, at least so far as the appellate court was concerned and explained that it was entirely up to the defendant whether to stay with Mr. Howard despite the disciplinary investigation or to have a new lawyer. This is true. And again, you're correct. We need to, you are obligated to defer to the factual findings of the state appellate court. However, this goes back to the point that we were discussing earlier, which is that clearly established federal law makes clear that the Sixth Amendment right to choice of counsel is one to autonomy and that even an effective denial of that right by, for example, arbitrarily failing to grant a continuance that would allow a defendant to be represented by his preferred counsel. Right, but none of that happens here. Right, but this it agreed completely. But what this is, is this is a flip side of the same coin. If effectively, if the Supreme Court is found that effectively denying an individual access to his preferred attorney by arbitrarily failing to grant a continuance constitutes a violation of the Sixth Amendment. So too must the inverse be true, which is where, as happened in this case, and as the Illinois appellate court acknowledged in this case, the court, pardon me, the court is- What would Graham have done with all this information? Howard's disciplinary record. Mr. Graham stated in an affidavit prepared for- Pardon? Mr. Graham stated in an affidavit for his post-conviction proceedings that had he known about the extent of Mr. Howard's ARDC problems, he would not have continued with Mr. Howard as his attorney. So, am I into rebuttal time? So what has happened with Howard? Howard, he was suspended from the practice of law shortly after Mr. Graham was convicted for capital murder and has remained suspended up until this time. And has what? He remains suspended. I can't hear you. He has not been able to practice law since that day in Illinois, since he was suspended. He's not been reinstated. Suspended forever, you mean, or disbarred, or what? He was suspended. For how long? He was suspended for two years, but my understanding is I would have to go back and check the ARDC website. My understanding is either he has appealed that suspension and hasn't been allowed back in or has not attempted to practice law in Illinois. I'm not quite sure where that is. You have to affirmatively seek reinstatement following a suspension of that length. Okay. And evidently that has not occurred so far as you can tell from the website. Or it has not been approved. Okay. I will save the rest of the time for rebuttal, such as it is. Thank you. May it please the court, counsel. I'm Assistant Attorney General Samina Mohamed on behalf of respondents. I'd like to begin by clarifying the appellate court's factual findings on its decision in this case. The appellate court found that the trial court gave petitioner the opportunity to discuss the matter further, to discuss Howard's disciplinary proceedings further, and gave the petitioner the opportunity to make his own decision. These are factual findings that should not be disturbed, as Judge Sykes pointed out on habeas review, and they have not been challenged on habeas review. The appellate court reasonably applied Supreme Court precedent as laid out as set forth first in Wheat v. United States. There, the court held that a non-indigent defendant has a limited right to choose his own representation. On the first day of trial at the colloquy between the trial court and petitioner, the trial court repeatedly conveyed to petitioner that the decision as to whether or not to proceed with Howard as his attorney belonged to petitioner himself. There's no question that the judge vouched for Howard's abilities. The trial judge vouched for all attorneys' abilities and stated that he had confidence in all the attorneys that were in court that day. That includes Mr. Howard. That includes Mr. Howard, yes. Called him legendary. He did. Repeatedly praised him. I believe he made two favorable comments about Howard's abilities, and he did, in fact, refer to Howard's reputation as legendary. But he immediately qualified those statements by saying to the petitioner that the court's opinion doesn't matter in this case. And it is only petitioner's opinion that is relevant. And Howard himself repeated that to petitioner, that if petitioner had any problems, petitioner should make the court aware and make him aware of that. But to the contrary, petitioner affirmed no less than three times on the record that he wished to proceed with Howard. Under these circumstances, the state appellate court's decision, finding that petitioner was not deprived of his right to counsel of choice, was more than reasonable under existing Supreme Court precedent. Contrary to petitioner's contention, there is no Supreme Court precedent holding that an effective denial amounts to a violation of the right to counsel of choice. The cases that petitioner cites for this proposition all arise out of this circuit and are not habeas cases. And as such, they are not relevant to this court's analysis on habeas review. The court in Wheat and Gonzales-Lopez established a general rule holding that a defendant is in limited circumstances entitled to the right to counsel of choice. And the state courts are given leeway to apply that general rule in the cases before them to the facts of the case before them. And in this case, the state court used that leeway to hold that where a petitioner is informed or learns that he has the ability to make a claim, to make the decision as to whether to continue with counsel, and affirms that he is making the decision to continue with his retained counsel, then there has been no denial of the right to counsel of choice. That trial was in 1998, right? That's correct. When was Howard suspended? Howard was suspended in 1995, September 1995, I believe, for a period of two years with all but the first five months stayed. So he was on probation after those first five months. But his probation, I believe, had ended at the time of the first day of trial, although he was under disciplinary proceedings. Was he subsequently suspended? He was, in 1999, after the appellate process. After the trial? After the trial. To turn briefly to the issue of the remedy, Gonzales-Lopez is inapplicable to this case, as it was decided after petitioner's conviction became final on habeas review. And as this court held, Gonzales-Lopez is a new rule that is not applicable retroactively under either of the Teague exceptions. And petitioner has not demonstrated adverse effect under the pre-Gonzales-Lopez standard. This struck me as really more appropriately a case of a challenge to the adequacy of a conflict waiver, although it's not a classic conflict situation, as in he was representing a witness or something of that nature, although there was some effect here. But that it's the kind of situation where there's an obligation on the part of the trial judge to verify that the defendant is operating under complete information about the nature of the chosen attorney's conflicts, and here, the ongoing ADARC investigation. But that apparently wasn't raised, or it hasn't been conceptualized as that kind of a challenge. That's correct, Your Honor. Petitioner has never framed the claim in those terms, either in state court or before this court today. And at this point, of course, it would be procedurally defaulted because he has never brought the claim under those terms. And I would agree, it does not fit within the counsel of choice, within a counsel of choice violation. If there are no further questions, we would ask this court to affirm the district court's judgment. Thank you. Okay, thank you, Ms. Mojave. Ms. Ellis? I think we'll rest on our previous arguments. Okay, thank you very much. And you were appointed, were you not? We thank you for your services. We thank you for your time.